UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THOMAS PETRO,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY<br>ADMINISTRATION,<br><br>　　　　　Defendant. | CASE NO. 1:20-CV-02838-PAG<br><br>JUDGE PATRICIA A. GAUGHAN<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Plaintiff Thomas Petro filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision denying in part supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On December 28, 2020, pursuant to Local Rule 72.2, this matter was referred to a Magistrate Judge for preparation of a Report and Recommendation, and was subsequently reassigned to me pursuant to General Order 2021-06. (Non-document entry of May 26, 2021). Following review, and for the reasons stated below, I recommend the District Court **AFFIRM** the Commissioner's decision.

PROCEDURAL BACKGROUND

Mr. Petro previously filed for SSI on March 14, 2016, alleging disability beginning on May 1, 2013.[1] (Tr. 87). Mr. Petro's claim was denied initially and on reconsideration. (Tr. 16, 87). On April 30, 2018, Administrative Law Judge Joseph Hajjar issued an unfavorable decision, finding Mr. Petro not disabled. (Tr. 87-96). As pertinent here, ALJ Hajjar found Mr. Petro had the residual functional capacity (RFC)

> to perform light work except occasionally push/pull with the bilateral upper extremities; occasionally reach overhead to the left, and occasionally reaching overhead to the right; frequently handle with the left hand, and can handle items frequently with the right hand; climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; balance, stoop, crouch, and crawl occasionally; kneel frequently; and never work at unprotected heights or around moving mechanical parts.

(Tr. 91). The Appeals Council denied Mr. Petro's request for review; and the District Court affirmed, making ALJ Hajjar's decision the Commissioner's final decision. (Tr. 16, 102-04, 108).

In this case, Mr. Petro filed for SSI on December 10, 2018, alleging a disability onset date of May 1, 2013. (Tr. 16). His claims were denied initially and on reconsideration. (Tr. 53-68, 70-83). He then requested a hearing before an Administrative Law Judge. (Tr. 124). Mr. Petro (represented by counsel), and a vocational expert (VE) testified at a hearing before the ALJ on May 13, 2020. (Tr. 35-51). On May 26, 2020, the ALJ issued a partially favorable decision, finding Mr. Petro was not disabled prior to January 1, 2020, but became disabled as of January 1, 2020 based on new and material evidence as of that date. (Tr. 16-29). The Appeals Council denied Mr. Petro's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6;

---

[1]  The 2016 application also included a previously-filed Title II application for disability insurance benefits, which is not in dispute in the 2018 application under review in this matter. (Tr. 16, 87).

*see* 20 C.F.R. §§ 416.1455, 416.1481). Mr. Petro timely filed this action on December 28, 2020. (ECF #1).

FACTUAL BACKGROUND

**I.      ADMINISTRATIVE HEARING**

The following summarizes the testimony of Mr. Petro and VE Suman Srinivasan, presented during the hearing before the ALJ.

Mr. Petro testified he experiences low back pain, for which he has had two surgeries and treats at the Cleveland Clinic. (Tr. 39-40). He has three bad discs in his back. (Tr. 43). Mr. Petro has experienced back issues for over 15 years. (*Id.*). In addition, Mr. Petro experiences vascular problems in his legs. (Tr. 40). Mr. Petro had stents placed in his left leg due to circulation problems. (*Id.*). The right leg also requires surgery for stent placement; this surgery had not yet been scheduled, because it requires a complete bypass in order to block for the stent. (Tr. 40-41). These conditions cause leg weakness, pain, and difficulty walking. (Tr. 40, 42). Mr. Petro testified "after they do all – fix up the legs, they're going to have to go back for the back because it's affecting my feet and they say that's neural so it attacks one bone into one thing physically." (Tr. 42). From this, it appears Mr. Petro's back issues affect his feet and he cannot schedule his back surgery until his leg issues are resolved. Mr. Petro expects he will be in and out of the hospital for six to eight months. (Tr. 44).

Due to the pain he experiences, Mr. Petro can only stand for ten minutes or climb two stairs. (Tr. 42-43). He has trouble getting out of a chair. (Tr. 43). He can only sleep for an hour or two at a time because of pain in his back, feet, and legs. (*Id.*). Mr. Petro stated he "live[s] in agony every day." (Tr. 40).

3

Mr. Petro lives in a ranch-style apartment with his 75-year-old mother. (Tr. 44). His mother covers all of the bills, and does all of the household chores, including cooking and cleaning. (Tr. 44-45). Mr. Petro is unable to vacuum because of the pushing and pulling motion required. (Tr. 45). Mr. Petro does not run errands or shop for groceries; on the occasions his mother is not well enough to shop, he will go but must use a cart to walk through the store. (Tr. 46).

The VE then testified. The ALJ first noted, in accordance with *Dennard*,[2] that Mr. Petro has past work as a construction worker, medium to very heavy, SVP 2, DOT 869.687-026[3] and as a grinding machine operator, light to medium, SVP 3, DOT 603.685-062. (Tr. 47). VE Srinivasan confirmed those positions were consistent with her records; the construction worker job is considered very heavy per the DOT, and the grinding machine operator was medium and semiskilled per the DOT. (*Id.*).

The ALJ presented the following hypothetical: assuming an individual 54 years old with a twelfth grade education, and the past work previously identified; limited to light work with non-exertional limitations including no climbing of ladders, ropes, or scaffolds; no crawling; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and overhead reaching without limitation of lateral reaching; frequent handling and fingering; no exposure to hazards such as heights, machinery, or commercial driving. (Tr. 47-48). The VE confirmed this hypothetical individual could not perform past work. (Tr. 48). The VE testified there would be

---

[2]     *Dennard v. Sec'y of Health & Hum. Servs.*, 907 F.2d 598 (6th Cir. 1990).

[3]     "DOT" refers to the *Dictionary of Occupational Titles*, published by the Department of Labor. 20 C.F.R. § 404.1566(d). "SVP" stands for "Specific Vocational Preparation" and refers to the amount of time a typical worker requires to learn the techniques, acquire the information, and develop the facility needed for average performance of a job. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 851 n.6 (6th Cir. 2010).

other jobs this individual could perform prior to age 55: merchandise marker (DOT 209.587-034), 125,000 jobs available nationally; routing clerk (DOT 222.687-022), 100,000 jobs available nationally; and store cashier (DOT 211.462-010), 600,000 jobs available nationally. (*Id.*).

The ALJ asked a second hypothetical: assume the same limitations as before, but with the additional limitation that due to somatic symptoms of the determinable impairments, the individual would be off task at least twenty percent of the time. (Tr. 48-49). The VE testified this limitation would be work preclusive, because most employers only tolerate up to ten percent of time off task. (Tr. 49).

Mr. Petro's counsel inquired of the VE, limiting the first hypothetical further to only sedentary work. (Tr. 49). The VE responded that Mr. Petro would not be capable of performing his past relevant work. (*Id.*).

## II.   PERSONAL AND VOCATIONAL EVIDENCE

Mr. Petro was 47 years old at the time of his alleged onset date of May 1, 2013; 52 years old at the onset date of May 1, 2018 pursuant to the prior decision; and 56 years old at the time of the administrative hearing. (Tr. 50, 53). Mr. Petro has a high school education. (Tr. 27). In the past, Mr. Petro has been employed as a construction worker and a grinding machine operator. (Tr. 27).

## III.   RELEVANT MEDICAL EVIDENCE[4]

On April 30, 2018, Mr. Petro presented to the emergency department complaining of a sharp, burning pain on the bottom of his left foot. (Tr. 307). Mr. Petro was negative for back pain,

---

[4]     Mr. Petro raises error concerning the ALJ's evaluation of his physical symptoms and the ALJ's application of *Drummond v. Comm'r of Soc. Sec.*, F.3d 387 (6th Cir. 1997), to find new and material evidence existed as of January 1, 2020 but not before. (Pl.'s Br., ECF #11, PageID 565-70) He states: "Plaintiff asserts that the record is replete with new and material evidence since the prior ALJ's decision and before January 1, 2020 that demonstrates significant worsening in his

gait problems. (Tr. 308). The left ankle had normal range of motion, but the Achilles tendon exhibited pain without defect and normal Thompson's test results. (Tr. 309). April 30, 2018 Doppler studies of the left leg showed no evidence of deep vein thrombosis, and no evidence of thrombus in the right common femoral vein. (Tr. 322-23, 375-76). An x-ray showed no acute bone or joint abnormalities, and the joint spaces appeared normal. (Tr. 321, 373-74). Mr. Petro was provided medication at the emergency department and left before discharge papers were prepared. (Tr. 310).

On May 7, 2018, Mr. Petro presented to his primary care physician, Miodrag Zivic, M.D., complaining of persistent back pain radiating down both legs, left foot pain, stiffness in both legs, and difficulty walking. (Tr. 306, 364-66). Mr. Petro's gait was normal at this visit. (Tr. 307). Dr. Zivic provided a consult to podiatry due to Mr. Petro's bilateral foot pain and "intractable left heel pain." (Tr. 307, 366).

On June 28, 2018, Mr. Petro underwent a lumbar spine MRI, in comparison with a prior MRI on July 7, 2016. (Tr. 316-20, 370-72, 459). The MRI showed multilevel spondylosis worst at L3-L4 and L4-L5 with severe canal narrowing, progression at L3-L4 compared to the prior examination; moderate canal narrowing at L2-L3; and progression of degenerative changes at L2-L3 with marrow edema in the bilateral L4-L5 pedicles likely due to mechanical stress. (*Id.*).

---

impairments, substantiating a sedentary RFC as of at least December 10, 2018." (*Id.* at PageID 570). As such, he waives argument on issues not raised in the opening brief. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). I summarize only the evidence relevant to the claim Mr. Petro has advanced, *i.e.*, the evidence of Mr. Petro's physical condition in the period from the prior decision on April 30, 2018 through the date the current ALJ found him disabled on January 1, 2020.

On August 2, 2018, Mr. Petro met with John Butler, M.D., to review his MRI; Dr. Butler noted Mr. Petro's symptoms were stable since his previous visit on April 26, 2018. (Tr. 305-06, 355-58, 462). The MRI showed lumbar stenosis from L2 to L5 related to degenerative disc disease and lumbar spondylosis. (Tr. 305-06; 355-58, 463). Mr. Petro's pain score was eight out of ten, radiating to his bilateral feet, and worse in his legs than in his back. (Tr. 305, 462). Mr. Petro presented with antalgic gait. (Tr. 305, 463).

Dr. Butler noted pervious conservative treatments including pain management and physical therapy. (*Id.*). Mr. Petro indicated he wished to consider lumbar decompression surgery at L2-L3, L3-L4, and L4-L5. (Tr. 306, 463). Dr. Butler counseled Mr. Petro on the risks, benefits, and anticipated outcomes of the surgery, and noted Mr. Petro intended to call the office later with his decision. (Tr. 463). Dr. Butler did not enter orders for surgery. (*Id.*).

On October 29, 2018, Mr. Petro presented to Dr. Zivic complaining of chronic back pain radiating to both legs. (Tr. 303, 361-63). On examination, Mr. Petro was "negative for back pain, falls, joint pain, myalgias, and neck pain." (*Id.*). Mr. Petro's gait was normal. (Tr. 304, 362). Dr. Zivic assessed Mr. Petro with peripheral polyneuropathy. (Tr. 304, 362). Dr. Zivic placed an order for a consult to general surgery. (Tr. 363).

On August 6, 2019, Mr. Petro presented to Dr. Zivic with a chief complaint of chronic back pain and bilateral leg pain. (Tr. 393-401). Dr. Zivic noted Mr. Petro had been in discussion with his neurosurgeon for potential surgery but Mr. Petro did not wish to proceed with surgery. (Tr. 393). Mr. Petro had run out of Lyrica, which had helped his pain. (*Id.*). Dr. Zivic continued to prescribe Lyrica, Zestril, and Cymbalta (Tr. 393-394).

7

Mr. Petro attended an appointment with Dr. Zivic on December 26, 2019. (Tr. 402-08). Mr. Petro reported worsening back and leg pain and having "trouble getting up." (*Id.*). Mr. Petro reported his lower back pain at a nine on a ten-point scale. (Tr. 407). Dr. Zivic recommended a consult with pain management (Tr. 403-404).

## IV.  MEDICAL OPINIONS

**State Agency Reviewers.** State agency medical consultants reviewed Mr. Petro's record at the initial and reconsideration levels.

On April 3, 2019, State agency reviewer William Bolz, M.D., noted the prior filings (including federal appeal) and found Mr. Petro was able to perform the limited range of light work set forth in the prior RFC. (Tr. 54, 60-66). Dr. Bolz determined Mr. Petro was able to perform light work with additional limitations, including frequent push/pull in the left upper extremity, occasional left overhead reach, and frequent left handling. (Tr. 64-66, 68). On examination, Dr. Bolz assessed Mr. Petro as having intact strength in the bilateral upper extremities and with normal gait. (Tr. 63). Mr. Petro was found not disabled at the initial level. (Tr. 68).

On August 12, 2019, State agency reviewer Abraham Mikalov, M.D., again determined Mr. Petro was able to perform light work with additional limitations consistent with the prior RFC. (Tr. 71, 78-83). Dr. Mikalov found Dr. Bolz's analysis at the initial level "reasonable and well supported . . . . All impairments and their functional limitations have been considered and are reflected in this assessment." (Tr. 80). Mr. Petro was found not disabled on reconsideration. (Tr. 82-83).

**Dr. Bradford.** Mr. Petro underwent a consultative evaluation with Dorothy Bradford, M.D., on March 29, 2019. (Tr. 378-83). Dr. Bradford noted decreased strength and range of

motion in the left shoulder, and mild decreased left-hand grasp. (Tr. 378-79, 383). Grasp, manipulation, pinch, and fine coordination were normal bilaterally. (Tr. 378). Mr. Petro was unable to open jars with his left hand. (Tr. 379). Dr. Bradford noted Mr. Petro's complaints of low back and neck pain and described weakness in his legs and difficulty walking. (Tr. 382). Past treatments included injections and physical therapy. (Tr. 382). Dr. Bradford provided the following assessment: degenerative disc disease of the cervical and lumbar spines without radiculopathy, possible lumbar canal stenosis, and left rotator cuff syndrome. (Tr. 383). Dr. Bradford opined that Mr. Petro cannot lift overhead and should be restricted to sedentary activity (*Id.*).

## THE ALJ'S DECISION

The ALJ's decision, dated May 26, 2020, included the following findings of fact and conclusions of law:

1.  The claimant has not engaged in substantial gainful activity since the date of application (20 CFR 416.971 *et seq.*).

2.  The claimant has had the following severe impairments: peripheral arterial/vascular disease; degenerative disc disease of cervical and lumbosacral spine; carpal tunnel syndrome; and rotator cuff syndrome (20 CFR 416.920(c)).

3.  The claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that prior to January 1, 2020, the date the claimant became disabled, the claimant had the residual functional capacity (20 CFR 416.945) to perform light work as defined in 20 CFR 416.967(b), except for no climbing of ladders, ropes or scaffolds, or crawling; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and overhead reaching without limitation of

lateral reaching; frequent handling and fingering; and no exposure to hazards (heights, machinery, commercial driving) (20 CFR 416.969a).

5.  After careful consideration of the entire record, the undersigned finds that beginning on January 1, 2020, the claimant has the residual functional capacity (20 CFR 416.945) to perform sedentary work as defined in 20 CFR 416.967(a), except for no climbing of ladders, ropes or scaffolds, or crawling; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and overhead reaching without limitation of lateral reaching; frequent handling and fingering; and no exposure to hazards (heights, machinery, commercial driving) (20 CFR 416.969a).

6.  The claimant has been unable to perform any past relevant work (20 CFR 416.965).

7.  Prior to the established disability onset date, the claimant was an individual closely approaching advanced age. The claimant's age category has not changed since the established disability onset date (20 CFR 416.963).

8.  The claimant has at least a high school education and is able to communicate in English. (20 CFR 416.964).

9.  Prior to January 1, 2020, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on January 1, 2020, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Prior to January 1, 2020, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 416.969, and 416.969a).

11.  Beginning on January 1, 2020, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

12.  The claimant was not disabled prior to January 1, 2020, but became disabled on that date and has continued to be disabled through the date of this decision. His disability is expected to last twelve months past the onset date (20 CFR 416.909 and 416.920(g)).

13. The claimant's substance use disorder(s) is not a contributing factor material to the determination of disability (20 CFR 416.935).

(Tr. 19-29).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference.

*Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner

follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine if a claimant is disabled:

1.   Was claimant engaged in a substantial gainful activity?

2.   Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.   Does the severe impairment meet one of the listed impairments?

4.   What is claimant's residual functional capacity and can claimant perform past relevant work?

5.   Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

In dispute is the period from the prior ALJ's finding Mr. Petro not disabled on April 30, 2018 and the current ALJ's finding Mr. Petro disabled as of January 1, 2020, due to new and material evidence in the record as of that date. Mr. Petro argues the ALJ erred in his analysis of the medical evidence pursuant to *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 843 (6th Cir. 1997),

13

asserting "the evidence supports a finding of disabled at least as of his application date [of December 10, 2018] and prior to January 1, 2020." (Pl.'s Br., ECF #11, PageID 565). The Commissioner opposes, arguing that substantial evidence supports the current ALJ's findings. (Comm'r's Br., ECF # 13, PageID 583-91). Moreover, the Commissioner invokes not only *Drummond* as controlling in this case, but also *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933-34 (6th Cir. 2018), and asserts the ALJ correctly applied controlling legal principles. (*Id.* at PageID 583-85).

I address each argument in turn below.

## I.    **Any alleged scrivener's error is harmless.**

Initially, both parties advance arguments concerning purported scrivener's errors.

First, the Commissioner asserts Mr. Petro inaccurately stated the ALJ found Dr. Bradford's report "to be persuasive" when the ALJ actually found that Dr. Bradford's opinion was not persuasive. (Comm'r's Br., ECF #13, PageID 587-88; *see also* Tr. 25). I accept Mr. Petro's explanation that this omission was a typographical error and will read his Merits Brief as intended in light of the clarification contained in his Reply Brief. (Pl.'s Reply Br., ECF #14, PageID 599-600).

Second, the Commissioner defends the current ALJ's statement "there is new and material evidence in the record as of January 1, 2020, but not before that date" as scrivener's error in light of the ALJ's 2019 RFC findings as compared to the prior RFC. (Tr. 17; Comm'r's Br., ECF #13, PageID 584 n.5). Mr. Petro responds that the ALJ's statement is not a scrivener's error, but rather is harmful error leading to a misapplication of *Drummond* and an erroneous finding that there was

14

no new and material evidence through December 31, 2019. (Pl.'s Reply Br., ECF #14, PageID 597-98).

I look to the record to determine if an alleged scrivener's error is harmless. *Duron v. Comm'r of Soc. Sec.*, No. 1:20-CV-112, 2021 WL 972808, at *4 (W.D. Mich. Mar. 16, 2021). In the ALJ's discussion of *res judicata*, the ALJ notes that "*res judicata* applies through April 30, 2018." (Tr. 16). The ALJ then provides a *Drummond* recitation, noting the Agency

> may not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim unless new and material evidence or changed circumstances provide a basis for a different finding. See also 98-4(6). Here, *there is new and material evidence in the record as of January 1, 2020, but not before that date.* Therefore, *Drummond* applies through December 31, 2019.

(Tr. 17; alleged error in italics).

Any overstatement by the ALJ indicating *Drummond* applies through December 31, 2019 does not lead to an incorrect outcome in this case. *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018). *Drummond* holds that *res judicata* binds the Commissioner to its prior decisions. *Drummond*, 126 F.3d at 843. *Earley* further instructs that *res judicata* bars an attempt to relitigate the same claim, but a new application for a new period of time is not the same claim and thus is not barred by *res judicata*. *Earley*, 893 F.3d at 933. "When an individual seeks disability benefits for a distinct period of time, each application is entitled to review." *Id.*

Despite invoking *Drummond* through December 31, 2019, the ALJ considered the evidence in the record for that period to craft a light exertional RFC for the 2019 period with additional limitations somewhat different from the April 30, 2018 RFC. (*See* Tr. 22-26; *compare with* Tr. 91). The ALJ correctly reviewed the new evidence in the record in accordance with *Earley*, but found Mr. Petro still able to perform light work with additional limitations. (Tr. 22-26). The ALJ

15

supported the RFC with the explanation that examination findings were largely normal, and Mr. Petro pursued conservative treatment throughout 2019—thus leading to the ALJ's statement that there was no new and material evidence before January 1, 2020. (Tr. 23-24).

Although the language used by the ALJ may suggest some confusion, I find on review that the ALJ properly applied *Drummond* to the prior decision, and properly applied *Earley* to review Mr. Petro's current claim. I therefore find the scrivener's error, if any, is harmless.

## II.     The ALJ did not err in applying the principles found in *Drummond* and *Earley.*

Mr. Petro alleges the ALJ's findings pursuant to *Drummond* are not supported by substantial evidence, asserting that "the record is replete with new and material evidence to substantiate the ALJ's finding that [Mr. Petro] retains the maximum functional capacity for sedentary work since at least December 10, 2018." (Pl.'s Br., ECF #11, PageID 567). Mr. Petro takes issue with the ALJ's RFC assessment that he could perform a limited range of light work for the period between the application date of December 10, 2018 and December 31, 2019. (*Id.* at PageID 566). Mr. Petro then points to correlative findings and medical opinions both within and without the relevant period in support of his argument for a sedentary RFC finding for the disputed period. (*See id.* at PageID 567-70; *see also* Pl.'s Reply Br., ECF #14, PageID 599-601).

The Commissioner opposes, asserting that Mr. Petro's reliance on *Drummond* is unavailing. (Comm'r's Br., ECF #13, PageID 584-91). The Commissioner asserts that the ALJ's decision regarding both the light and the sedentary RFCs were supported by substantial evidence. (*Id.*).

As explained above, *Drummond* provides that principles of *res judicata* bind the Commissioner to its prior decisions. *Drummond*, 126 F.3d at 843. *Earley* clarifies *Drummond* by explaining that "[a]n individual may file a second application—for a new period of time—for all

manner of reasons and obtain independent review of it so long as the claimant presents evidence

of a change in condition or satisfies a new regulatory threshold." *Earley*, 893 F.3d at 934. And, "it

is fair for an administrative law judge to take the view that, absent new and additional evidence,

the first administrative law judge's findings are a legitimate, albeit not binding, consideration in

reviewing a second application." *Id.* at 933. Further, "[a]n administrative law judge honors

principles [of *res judicata*] by considering what an earlier judge found with respect to a later

application and by considering that earlier record." *Id.*

    The prior ALJ found Mr. Petro had the following RFC:

| 2018 RFC | After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work except occasionally push/pull with the bilateral upper extremities; occasionally reach overhead to the left, and occasionally reaching overhead to the right; frequently handle with the left hand, and can handle items frequently with the right hand; climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; balance, stoop, crouch, and crawl occasionally; kneel frequently; and never work at unprotected heights or around moving mechanical parts. |
|---|---|

(Tr. 91).

    Here, the ALJ began his decision outlining the prior ALJ's decision and noting that

*Drummond* applied through December 31, 2019. (Tr. 16-17). The ALJ then indicated he found

"new and material evidence in the record as of January 1, 2020, but not before that date." (Tr. 17).

    Thus, the ALJ presents two RFCs, for two different periods, as follows:

| 2019 RFC | After careful consideration of the entire record, the undersigned finds that prior to January 1, 2020, the date the claimant became disabled, the claimant had the residual functional capacity (20 CFR 416.945) to perform light work as defined in 20 CFR 416.967(b), except for no climbing of ladders, ropes or scaffolds, or crawling; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and overhead reaching without limitation of lateral reaching; frequent handling and fingering; and no exposure to hazards (heights, machinery, commercial driving) (20 CFR 416.969a). |
|---|---|
| 2020 RFC | After careful consideration of the entire record, the undersigned finds that beginning on January 1, 2020, the claimant has the residual functional capacity (20 CFR 416.945) to perform sedentary work as defined in 20 CFR 416.967(a), except for no climbing of ladders, ropes or scaffolds, or crawling; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and overhead reaching without limitation of lateral reaching; frequent handling and fingering; and no exposure to hazards (heights, machinery, commercial driving) (20 CFR 416.969a). |

(Tr. 22, 26).

Although the ALJ's decision does not mention *Earley*, it is apparent the ALJ applied *Earley* to review the evidence in the record for each period. The similarities between the 2018 RFC and the 2019 RFC demonstrate the current ALJ's consideration of the prior ALJ's findings. (*Compare* Tr. 22 *with* Tr. 91). I note, for example, both RFCs are largely similar light exertional RFCs with additional limitations. (*See id.*). But the ALJ's 2019 RFC provides greater limitations with respect to crawling, kneeling, and commercial driving. (*Id.*). The discussion of new medical evidence (*see* Tr. 22-26) and the material changes in the 2019 RFC as compared to the 2018 RFC (*compare* Tr. 22 *with* Tr. 91) demonstrate the ALJ did indeed find "new and additional evidence" in the record to render the 2018 RFC not binding pursuant to *Earley*. 893 F.3d at 933. I therefore find no error with the ALJ's application of *Drummond* or *Earley*.

18

**III.    The ALJ's RFC findings are supported by substantial evidence.**

Significant portions of the parties' briefs center on the medical evidence the ALJ cited in crafting the 2019 and 2020 RFCs, whether Mr. Petro should be restricted to a sedentary RFC, and when. (*See* Pl.'s Br., ECF #11, PageID 566-70; *see also* Comm'r's Br., ECF #13, PageID 584-91). These arguments are unavailing. At best, they are unpersuasive *post-hoc* rationalizations from counsel, and at worst, they invite this Court to re-weigh the evidence.

The ALJ is responsible for assessing a claimant's residual functional capacity. *See* 20 C.F.R. § 416.946. Under agency regulations, "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The RFC is to be an assessment of the claimant's remaining capacity for work once the claimant's limitations have been considered. *Id.* at 632. An ALJ is to consider all evidence in the record to evaluate the limiting effects of the claimant's symptoms, including daily activities, the nature of the alleged symptoms, efforts made to alleviate the symptoms, the type and efficacy of treatments, and other factors regarding the claimant's functional limitations. *Avery v. Comm'r of Soc. Sec.*, No. 1:19-CV-1963, 2020 WL 2496917, at *11 (N.D. Ohio May 14, 2020). The ALJ also must determine the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." *Id.* An ALJ "is only required to incorporate those limitations" the ALJ  "has deemed credible" and may reject limitations or impose more restrictions. *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010). Doing so does not mean an RFC is not supported by substantial evidence. *Ross v. Comm'r of Soc. Sec.*, No. 14-11144, 2015 WL 1245830, at *11 (E.D. Mich. Mar. 18, 2015).

19

The ALJ retains the duty to "weigh the evidence; to resolve material conflicts; to make independent findings of fact; and to determine the case accordingly." *Skinner v. Sec'y of Health & Hum. Servs.*, 902 F.2d 447, 448 (6th Cir. 1990). It is the limited role of this Court to determine whether there is substantial evidence in the record, taken as a whole, to support the findings. *Id.*

When reviewing medical opinion evidence, the ALJ is to articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 416.920c(b). The regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform physical demands of work activities, the ability to perform mental demands of work activities, the ability to perform other demands of work, and the ability to adapt to environmental conditions. 20 C.F.R. § 416.913(a)(2).

The ALJ is not required to defer to or give any specific evidentiary weight to a medical opinion, is not bound by the "treating physician rule," and is not required to give a treating source controlling weight. *Id.* at § 416.920c(a); *see also Jones v. Comm'r of Soc. Sec.*, No. 19-1102, 2020 WL 1703735, at *2 (N.D. Ohio Apr. 8, 2020). Instead, the ALJ must articulate the consideration given to the medical opinions in the record, grounded in the two "most important factors"—supportability[5] and consistency.[6] *Id.* at § 416.920c(b). An ALJ must explain how she considered the

---

[5]     "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his medical opinion(s) or prior administrative medical finding(s), the more persuasive the opinion(s) and finding(s) will be." 20 C.F.R. § 416.920c(c)(1).

[6]     "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the opinion(s) and finding(s) will be." 20 C.F.R. §§ 416.920c(c)(2).

factors of supportability and consistency, and "may, but [is] not required to" explain the remaining factors of relationship with the claimant, specialization, or other factors, absent the ALJ's finding that two opinions are "equally" persuasive. *See* 20 C.F.R. §§ 416.920c(b)(2), (3).

An ALJ may rely on the limitations contained in a medical opinion when forming the RFC, but is not required to adopt all opined limitations, even if he finds the opinion persuasive. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 269 (6th Cir. 2015). The ALJ is required only to say enough to allow this Court to trace the path of the reasoning in the decision. *See Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011).

Here, the ALJ provided a thorough explanation of his RFC findings for the relevant period, grounded in his review of the record evidence, with medical opinions explained in terms of supportability and consistency, as the regulations require. (Tr. 22-26). The ALJ noted, for example, in the 2019 RFC explanation, "the level of limitation opined by Dr. Bradford is not supported or consistent with her own physical examination findings or the longitudinal physical exam findings prior to January 1, 2020 and the conservative course of treatment pursued during that period." (Tr. 25). The ALJ also indicated the state agency medical opinions were "persuasive for the period prior to January 1, 2020, as they are supported by the objective imaging results, physical exam findings, and very conservative treatment plan, and consistent with the overall evidence during that period." (Tr. 24-25).  The ALJ noted, "while the record shows the claimant experienced symptoms from his conditions prior to January 1, 2020, treatment plans during that relevant period were conservative in nature, involving minimal outpatient office visits and management of symptoms with medication and reported relief." (Tr. 24). And "In sum, the above residual functional capacity assessment is supported by the medical evidence of record, including the

examinations findings, testing, imaging, the weighted portions of the medical opinions of record, and the claimant's reported daily functioning consistent with this medical evidence." (Tr. 25). Therefore, the ALJ found no additional limitations were warranted to further reduce the RFC for the period through December 31, 2019. (Tr. 26).

The ALJ then contrasted the 2019 period with the material change in Mr. Petro's condition beginning in 2020: "beginning on January 1, 2020, the claimant's allegations regarding his symptoms and limitations are consistent with the evidence." (*Id.*). In support, the ALJ indicated objective imaging in January 2020 showing popliteal artery disease bilaterally, among other significant findings, January 31, 2020 testing showing 20-49% stenosis of the internal carotid artery, March 2020 examination notes indicating severe peripheral vascular disease, and Mr. Petro's hearing testimony that he has undergone surgery and anticipates additional surgeries. (Tr. 26). The ALJ therefore limited Mr. Petro to a sedentary RFC with additional limitations, thus leading to a finding of disability as of January 1, 2020. (Tr. 26-27, 29).

It is not the role of this Court to re-weigh the evidence, *Brainard*, 889 F.2d at 681, to determine when Mr. Petro should have been found to have a sedentary RFC and resulting favorable decision. Rather, the ALJ's decision demonstrates proper application of *Drummond*, *Earley*, and agency regulations to craft two RFCs within the ALJ's "zone of choice." I therefore find no reason to recommend remand.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **AFFIRM** the Commissioner's decision denying SSI.

Dated: April 8, 2022

_____

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

OBJECTIONS, REVIEW, AND APPEAL

Within 14 days after being served with a copy of this Report and
Recommendation, a party may serve and file specific written objections to the
proposed findings and recommendations of the Magistrate Judge. *See* Fed. R.
Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly
asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or
waiver of the right to raise the issue on appeal, either to the district judge or in a
subsequent appeal to the United States Court of Appeals, depending on how or
whether the party responds to the Report and Recommendation. *Berkshire v.
Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not
merely indicate a general objection to the entirety of the Report and
Recommendation; "a general objection has the same effect as would a failure to
object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir.
1991). Objections should focus on specific concerns and not merely restate the
arguments in briefs submitted to the Magistrate Judge. "A reexamination of the
exact same argument that was presented to the Magistrate Judge without specific
objections 'wastes judicial resources rather than saving them and runs contrary to
the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186,
2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at
509). The failure to assert specific objections may in rare cases be excused in the
interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th
Cir. 2019).